IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2016

## TIMOTHY W. SPARROW v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR037909     Michael W. Binkley, Judge**

---

**No. M2016-00050-CCA-R3-PC – Filed September 19, 2016**

---

The petitioner, Timothy W. Sparrow, appeals the denial of his petition for post-conviction relief, which petition challenged his 2011 Williamson County Circuit Court jury convictions of second degree murder, attempted first degree murder, and attempted aggravated robbery.  In this appeal, he claims that he was deprived of the effective assistance of counsel at trial.  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Matthew J. Crigger, Brentwood, Tennessee, for the appellant, Timothy W. Sparrow.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Kim R. Helper, District Attorney General; and Terry Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

A Williamson County Circuit Court jury convicted the petitioner, who had originally been charged with one count of premeditated first degree murder, one count of felony murder, one count of attempted first degree murder, and one count of attempted especially aggravated robbery, of two counts of the lesser included offense of second degree murder related to the death of Jose Arias, one count of attempted first degree murder of Thomas Davenport, and one count of attempted especially aggravated robbery of Mr. Davenport for his role in an August 18, 2008 shooting.  The trial court merged the second degree murder convictions into a single conviction and, after a sentencing hearing, imposed a total effective sentence of 40 years' incarceration.

As detailed by this court on direct appeal, the petitioner entered the residence shared by Kimberly Bennett and Mr. Davenport and shot Mr. Arias, who was a frequent overnight guest at the residence, in the face and attempted to shoot Mr. Davenport after demanding money from Mr. Davenport. *See State v. Timothy W. Sparrow*, No. M2012-00532-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App., Nashville, Mar. 14, 2013), *perm. app. denied* (Tenn. Aug. 26, 2013). Ms. Bennett and Mr. Davenport viewed photographic lineups and identified the petitioner, who had visited the residence four or five times before the shooting to purchase drugs and whom they knew as "Larry," as the shooter. *See id.*, slip op. at 2. Mr. Davenport said that the petitioner shot Mr. Arias after Mr. Davenport declined to purchase a gun and a compact disc player from the petitioner. The petitioner pointed his gun at Mr. Davenport and demanded money, and when Mr. Davenport replied that he had none, the petitioner pulled the trigger. The gun jammed, and the petitioner ran away. *See id.*, slip op. at 4-5. A mutual friend of the petitioner's and Mr. Davenport's, Charles Leverette, told Mr. Davenport that the petitioner's name was Timmy. Marilyn Holt, who also lived in the residence with Mr. Davenport and Ms. Bennett, saw the shooter exit the house and later identified the petitioner from a photographic lineup, but she admitted that she had identified the petitioner only because Mr. Davenport had told her that the petitioner was the shooter. *See id.*, slip op. at 7-8. Ms. Bennett, Mr. Davenport, and Ms. Holt indicated that the petitioner wore a navy or black t-shirt at the time of the shooting.

Mr. Leverette identified the petitioner as the man known as Larry who had gone with him to purchase drugs from Mr. Davenport. Each of the witnesses identified the vehicle driven by the petitioner by its distinctive sound and appearance, and Shelbyville Police issued a "BOLO" for the sedan. When an officer stopped a vehicle matching the description, the driver ran away from the car. As officers searched for the suspect with the assistance of a police dog, the dog lay down in front of a black t-shirt on the ground in the area where the man had traveled; officers collected the shirt. *See id.*, slip op. at 10. Deoxyribonucleic acid ("DNA") testing on the shirt revealed that the petitioner was the major contributor of DNA on the shirt, and further testing revealed the presence of gunshot residue on the shirt. *See id.*, slip op. at 14.

On March 14, 2014, the petitioner filed a pro se petition for post-conviction relief, alleging that he was deprived of the effective assistance of counsel. Specifically, the petitioner claimed that counsel performed deficiently by failing to "challeng[e] the actual innocence matter," by "coercing [the] petitioner not to testify at trial," by failing to challenge the composition of the jury, by failing to object to the admission of the black t-shirt into evidence, by failing to challenge the application of the enhancement and mitigating factors during sentencing, by failing to adequately challenge the credibility of the State's witnesses, and by failing to request a change of venue. Via an amended

petition for post-conviction relief filed by post-conviction counsel, the petitioner adopted all of the claims made in his pro se petition, specifically reiterated his claim that trial counsel performed deficiently by failing to object to the admission of the black t-shirt into evidence, and added a claim that counsel performed deficiently by failing to present an expert witness on the issue of eyewitness identification.

The petitioner did not present any witnesses at the October 28, 2015 evidentiary hearing and did not himself testify. Instead, the petitioner relied on the trial transcript and the argument of his counsel in support of his claims. The State presented the testimony of trial counsel.

Trial counsel testified that he "wanted to keep the T-shirt out, but . . . that was a tough decision for me." He explained that he "wanted to put the T-shirt in to show that there was no blood on it" and that he "wanted to provide an explanation about . . . why there might be gunshot residue." He said that, in an effort to negate the results of the gunshot residue testing, he cross-examined each of the officers who had been involved in the collection and handling of the shirt. In response to counsel's questioning, the officers testified that they had not worn gloves when they collected the shirt, that they did not know what might have been in the collection bag before they put the shirt inside, that they had handled their handcuffs that day, and that they could not recall when they had last cleaned their weapons. Trial counsel employed an expert witness in gunshot residue, David Brundage, who explained to the jury that any of these actions by the law enforcement officers who collected and handled the shirt could have resulted in a transfer of gunshot residue or the same chemicals that make up gunshot residue.

Regarding his desire to admit the t-shirt into evidence, counsel explained that other testimony established that "there was blood everywhere" at the crime scene, including on the walls and on the refrigerator. He said that, given the amount of blood present, there would have been "a high chance" that the shooter would have had blood on his clothing. He said that the fact that the t-shirt had no blood on it worked in the petitioner's favor because counsel was able to argue that "someone that committed this murder would have had blood on them."

Trial counsel testified that he initially asked the trial court to admit the t-shirt for identification purposes only, but the trial court refused. He said that he was faced with a tactical decision at that point because the shirt "cut both ways, because [he] wanted it in to show no blood was on it, but [he] didn't want it in to show it had alleged gunshot residue." He said that by the time he told the trial court that he had no objection to the shirt's being admitted into evidence, "all the testimony" had already "come in about it." Trial counsel denied that his defense would have been stronger had the shirt

-3-

not been admitted at trial, reiterating that the absence of blood on the shirt suggested that the petitioner "was not, indeed, the shooter."

Trial counsel added that he believed the petitioner to be innocent, explaining that commission of such a brutal crime was "uncharacteristic" for a person like the petitioner.

The post-conviction court denied post-conviction relief, finding that the petitioner had failed to establish by clear and convincing evidence facts sufficient to establish that his counsel was constitutionally ineffective. As is relevant to this appeal, the post-conviction court accredited trial counsel's testimony that although he "wanted to keep the shirt out of evidence because it had gunshot residue on it," he also "wanted to have the shirt in evidence because it was not stained with blood" despite that witnesses described an extremely bloody crime scene. The court also found that trial counsel thoroughly cross-examined the law enforcement officers who handled the shirt prior to the gunshot residue testing, leading the officers to admit that they did not wear gloves while handling the shirt and that the shirt was placed in a bag that could have contained other items contaminated with gunshot residue. The court found that trial counsel employed a gunshot residue expert who assisted in trial preparation and who testified on the petitioner's behalf at trial. Trial counsel also used the fact that the shirt contained no blood spatters even though the crime scene was "covered in blood spatters and pools" to support the petitioner's claim of innocence.

In this timely appeal, the petitioner contends that the post-conviction court erred by denying relief, arguing that trial counsel performed deficiently by failing to object to the admission of the t-shirt into evidence and that, but for counsel's deficient performance, he would have been acquitted. The State asserts that the post-conviction court did not err.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record supports the ruling of the post-conviction court. Trial counsel's accredited testimony established that although he did not want the t-shirt admitted at trial because it contained gunshot residue, he used the admission of the shirt to his advantage by pointing out that it tested negative for the presence of blood. He explained that photographs and eyewitness testimony established that the crime scene

was extremely bloody, making it doubtful that the shooter could have escaped without any blood on his clothes. Regarding the chain of custody, trial counsel thoroughly cross-examined each person involved in the handling of the t-shirt prior to testing, and his questioning established that the shirt had been handled without gloves by officers who had also touched their own guns and handcuffs. The gunshot residue expert employed by trial counsel helped explain how gunshot residue could be transferred via mishandling. Finally, the remaining evidence against the petitioner, which included two credible eyewitness identifications, was overwhelming. Under these circumstances, we cannot conclude that trial counsel's failure to object to the admission of the shirt, even if it could be classified as deficient performance, affected the outcome of the petitioner's trial.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE